IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Marion P. Binnarr, Jr. ,  ) | |
| ) | Civil Action No. 6:14-4425-RMG-KFM |
| Plaintiff,  ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs.  ) | |
| ) | |
| Carolyn W. Colvin, Acting  ) | |
| Commissioner of Social Security,  ) | |
| ) | |
| Defendant.  ) | |
| _____ ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on August 29, 2011, alleging that he became unable to work on January 1, 2008. The application was denied initially and on reconsideration by the Social Security Administration. On July 16, 2012, the plaintiff requested a hearing. At the hearing, the plaintiff, through his attorney, amended his alleged onset date of disability to April 6, 2010. The administrative law judge ("ALJ"), before whom the plaintiff and J. Adger Brown, Jr., an impartial vocational expert, appeared on June 20, 2013, considered the case *de novo* and, on July 18, 2013, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social

Security when the Appeals Council denied the plaintiff's request for review on September 18, 2014.  The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)    The claimant last met the insured status requirements of the Social Security Act on March 31, 2012.

(2)    The claimant did not engage in substantial gainful activity during the period from his amended onset date of April 6, 2010, through his date last insured of March 31, 2012 (20 C.F.R §§ 404.1571 *et seq*).

(3)    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, osteoarthritis, history of cardiac bypass surgery, anxiety, and depression (20 C.F.R. § 404.1520(c)).

(4)    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

(5)    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he cannot crawl or kneel; can occasionally crouch; can have no exposure to temperature extremes, high humidity, vibration, or work hazards; is limited to simple, repetitive tasks not requiring ongoing interaction with the public; and cannot work in an environment requiring fast-paced production.

(6)    Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

(7)    The claimant was born on January 3, 1962, and was 50 years old, which is defined as a younger individual age 18-49, on the date last insured.  The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. § 404.1563).

(8)    The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

2

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)).

(11)     The claimant was not under a disability, as defined in the Social Security Act, at any time from April 6, 2010, the amended onset date, through March 31, 2012, the date last insured (20 C.F.R. § 404.1520(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2)  has a severe impairment, (3)  has an impairment that equals an illness contained in the Social Security Administration's Official Listings of

3

Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments that prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a

4

> preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is "substantial
> evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 48 years-old on his amended alleged disability onset date and was 50 years old on his date last insured (Tr. 167). He has a tenth grade education and was previously employed as a truck driver, brake mechanic, and worked in construction as a siding applicator (Tr. 42, 59, 220).

In September 2011, the plaintiff completed a function report in connection with his DIB application (Tr. 228-36). In the report, the plaintiff stated that he prepared his own meals, drove a car, went shopping independently, and noted that he left his house frequently (four to five times a week) (Tr. 229-31). In a subsequent report submitted in May 2012, the plaintiff noted that he had no difficulty tending to his personal care needs (dressing, bathing, shaving, feeding, etc.), he prepared meals independently, and he handled his finances without assistance (Tr. 251-53). The plaintiff also indicated that he primarily spent his time watching television and interacting with others, noting that he got along "great" with authority figures (Tr. 254-56).

Medical records from mid-2008 indicate that the plaintiff experienced coronary artery disease, which was successfully treated prior to the relevant period (Tr. 281, 287, 304-05). Specifically, on August 7, 2008, the plaintiff underwent left heart catheterization

5

at Trident Medical Center (Tr. 281). The plaintiff was discharged in stable condition and was directed to maintain a cardiac diet (Tr. 282). The plaintiff was treated by cardiologist Mark Mataosky, M.D. (Tr. 298-307). During the plaintiff's subsequent visit in September 2008, he reported no issues, telling told Dr. Mataosky that he continued to feel "very well" and had increased his level of activity without any chest discomfort or cardiac symptoms (Tr. 305-06).

In December 2008, the plaintiff visited Anthony Glaser, M.D., of Flowertown Family Medicine, largely complaining of general pain in his neck, shoulder, and legs (Tr. 317-322). During his initial visit on December 23, 2008, he alleged experiencing anxiety. Upon mental examination, Dr. Glaser noted that the plaintiff was alert, well-oriented and exhibited normal mood, affect, judgment, insight, and memory function (Tr. 336). Dr. Glaser also reported that the plaintiff's neurological system was intact and normal (*id*.). A physical examination revealed that the plaintiff exhibited no cardiovascular symptoms, and he was able to walk heel-to-toe, on his toes, and perform squats and raises (*id*.). Dr. Glaser made a slight change to the plaintiff's pain medication (from Lorcet to Lortab), advised him to continue taking previously prescribed Xanax for his anxiety, and directed the plaintiff to return for a routine follow-up in two months (*id*.). Dr. Glaser reported similar findings during the plaintiff's visit in February 2009 and made no changes to his medication regimen (Tr. 334).

On March 5, 2009, approximately eight months after his heart procedure, the plaintiff returned to Dr. Mataosky who noted that the plaintiff "continues to do very well as he is very active without chest discomfort." Dr. Mataosky also noted that the plaintiff was able to perform strenuous activity for long periods of time without cardiopulmonary symptoms (Tr. 304). Dr. Mataosky further reported that the plaintiff was "trying to return to work as a truck driver and should not have any problems doing so" (*id*.).

6

The plaintiff returned for a follow-up examination on June 2, 2009, alleging general pain and anxiety (Tr. 331-32). In corresponding treatment records, Dr. Glaser noted Dr. Mataosky's findings from March 2009, namely, that the plaintiff had no cardiovascular symptoms and was able to perform strenuous physical activities for long periods of time (Tr. 331). Dr. Glaser reported that the plaintiff's previously reported sleep apnea was resolved due to weight loss (*id.*). Upon psychiatric examination, the plaintiff appeared alert and demonstrated normal judgment, mood, insight, affect, and memory function (Tr. 332). Dr. Glaser made no changes to the plaintiff's medications (Tr. 334).

During a follow-up exam in October 2009, Dr. Glaser again reported that the plaintiff was "alert and oriented x 3," exhibited normal mood, affect, judgment, and insight (Tr. 330). On April 6, 2010, the plaintiff followed up with Dr. Glaser for chronic pain, coronary artery disease ("CAD"), and anxiety (Tr. 328-30). The plaintiff presented with neuropathic type pain in both legs and a severe burning pain in the base of his neck and posterior shoulders. The plaintiff reported that he could only drive for 15 to 20 minutes at a time and was taking at least four Lortabs per day. He had a "somewhat" anxious and depressed mood, but otherwise normal psychiatric exam. Dr. Glaser stated in his notes that he discussed with the plaintiff "applying for disability, although he may not qualify, if he did he could at least have a better evaluation of his pain, and be treated if amenable to more definitive treatment, which would then allow him to return to work" (Tr. 328).

During routine appointments in September 2010 (Tr. 326), March 2011 (Tr. 324), June 2011 (Tr. 320, 322), , October 2011 (Tr. 353), and January 2012 (Tr. 351), Dr. Glaser reported that the plaintiff was alert, well-oriented, demonstrated normal judgment and insight, exhibited a "somewhat depressed mood as per baseline," and revealed normal recent and remote memory functions.

On June 5, 2011, the plaintiff was involved in an accident while riding his motorcycle (Tr. 313). The plaintiff was ambulatory at the scene of the accident and visited

7

Trident Medical Center the following day (Tr. 313-15).  An examination revealed that the plaintiff was alert, well-oriented, and in no acute distress  (Tr. 314).  He exhibited no head tenderness, and, upon physical exam, the plaintiff's extremities were identified as "normal" (*id*.).  X-rays of his cervical and thoracic spine also yielded normal results, and no fractures or soft tissue issues were identified (*id*.).  Based on the plaintiff's allegations of pain, he was diagnosed with strains of his shoulders and cervical spine (Tr. 315).  The plaintiff was discharged in stable condition, prescribed Lortab and Flexeril, and directed not to work for two days (*id*.).

On November 18, 2011, the plaintiff presented to Cashton Spivey, Ph.D., for a consultative psychological evaluation in reference to his mental symptoms and told Dr. Spivey that he experienced anxiety (Tr. 343-47).  The plaintiff was cooperative and compliant throughout the evaluation session and confirmed that he had never participated in outpatient psychological services nor been hospitalized due to mental impairment (Tr. 345).  On the Mini-Mental State Examination, the plaintiff obtained a score of 28 out of a possible 30 points, thus falling within normal limits (Tr. 346).  Dr. Spivey noted that the plaintiff was well-oriented.  The plaintiff also demonstrated intact language skills and was able to follow three-step commands.  Dr. Spivey noted that the plaintiff could perform certain household chores and duties.  Moreover, the plaintiff demonstrated fair insight and judgment; logical and coherent thought processes; fair attention/concentration function; engaged in appropriate eye contact; and exhibited normal psychomotor functioning (*id*.).  Based on his clinical interview of the plaintiff and relevant medical evidence, Dr. Spivey determined that the plaintiff was capable of understanding simple instructions and performing simple tasks in the workplace (*id*.).

During a January 24, 2012, visit, the plaintiff informed Dr. Glaser that his disability application had been denied at the initial administrative level (Tr. 350).  He

complained of headaches and chronic back and neck pain with muscle spasms in the posterior aspects of both legs (*id.*).

On June 13, 2012, state agency consultants Angela Saito, M.D., and Holly Hadley, Psy.D., conducted a physical residual functional capacity assessment and mental residual functional capacity assessment respectively (Tr. 84-94). In reference to the plaintiff's physical impairments and credibly-established limitations, Dr. Saito determined that the plaintiff could perform light work, occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, and stand approximately six hours with normal breaks during an eight-hour workday, and sit for approximately six hours during the same (Tr. 88, 93). Dr. Saito also reviewed and addressed subjective allegations, concluding that the plaintiff's claim that he was only able to walk a half city block was overstated (Tr. 90). In reference to the plaintiff's mental symptoms, Dr. Hadley determined that even with his credibly-established impairments, the plaintiff was able to perform simple, repetitive tasks in a work setting that did not require ongoing interaction with the general public (Tr. 85-86, 90-92).

On May 2, 2013, Dr. Glaser opined that the plaintiff could not stand, sit, or walk for more than two hours in an eight-hour work day and would be likely to be absent from work more than four days per month as a result of his impairments or treatment if he attempted to work. The medical basis for the restrictions was "chronic back, neck, leg pain; chronic joint pains, coronary heart disease, [and] chronic use of high dose opioid pain medication" (Tr. 361).

## ANALYSIS

The plaintiff argues that the ALJ erred by (1) failing to consider the opinion of his primary treating physician with respect to his residual functional capacity ("RFC") and (2) failing to find the plaintiff disabled based on the vocational expert's testimony.

***Treating Physician***

The plaintiff first argues that the ALJ failed to properly consider the opinion of his primary treating physician, Dr. Glaser (pl. brief at 5-10; pl. reply at 1-8).   The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b) and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2)  the length of the treatment relationship and the frequency of the examinations; (3)  the nature and extent of the treatment relationship; (4)  the evidence with which the physician supports his opinion; (5)  the consistency of the opinion; and (6)  whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* § 404.1527(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).   However, statements that a patient is "disabled" or "unable to work" or similar assertions are not medical opinions.  These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 404.1527(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5.  As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled

10

> to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

On May 2, 2013, Dr. Glaser opined that the plaintiff could not stand, sit, or walk for more than two hours in an eight-hour work day and would be likely to be absent from work more than four days per month as a result of his impairments or treatment if he attempted to work. The medical basis for the restrictions were "chronic back, neck, leg pain; chronic joint pains, coronary heart disease, [and] chronic use of high dose opioid pain medication." He further opined that the plaintiff would require an assistive device to ambulate even minimally in a normal workday (Tr. 361).

The ALJ considered Dr. Glaser's opinion but found that it should be accorded "little weight" (Tr. 25). First, the ALJ noted that the opinion was "rendered long after the date last insured" (*id.*). The plaintiff's date last insured was March 31, 2012, and the opinion was given over one year later in May 2013. Dr. Glaser did not indicate in the single-page form that the restrictions he noted applied to the relevant period (*see* Tr. 361).

In his reply brief, the plaintiff argues that, under *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337 (4th Cir. 2012), the ALJ erred in discounting the opinion based on the fact that the opinion was given after his date last insured (pl. reply at 7-8). In *Bird*, the court stated:

> In *Moore*, we recognized that evidence created after a claimant's [date last insured ("DLI"], which permits an inference of linkage between the claimant's post-DLI state of health and her pre-DLI condition, could be the "most cogent proof" of a claimant's pre-DLI disability. Accordingly, under our decisions in *Moore* and *Johnson*, retrospective consideration of evidence is appropriate when "the record is not so persuasive as to rule out any linkage" of the final condition of the claimant with his earlier symptoms.

*Bird*, 699 F.3d at 341 (citing *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir.1969) and *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir.2005)).

11

The plaintiff notes that Dr. Glaser began treating him in 2009 and treated him through the relevant period for "neuropathic pain in both legs and a severe pain burning pain in the base of his neck and posterior shoulders" (pl. reply at 7 (citing Tr. 329)). The undersigned agrees with the plaintiff that, under *Bird*, the ALJ was required to consider Dr. Glaser's post-date last insured opinion as the record "is not so persuasive as to rule out any linkage" with the plaintiff's condition prior to his date last insured. *See Bird*, 699 F.3d at 341. However, the ALJ here *did* consider the opinion and gave other reasons for giving the opinion little weight. The ALJ noted that Dr. Glaser's opinion was inconsistent with his own findings on physical examination and that the opinions of the state agency examining and consulting physicians were entitled to greater weight as they were "well supported by the weight of the evidence of record"(Tr. 25-26). In his May 2013 opinion, Dr. Glaser stated that the medical basis for the stated restrictions was "chronic back, neck, leg pain; chronic joint pains, coronary heart disease, [and] chronic use of high dose opioid pain medication." He further opined that the plaintiff would require an assistive device to ambulate even minimally in a normal workday (Tr. 361). As noted by the ALJ, during the relevant time period, examinations by Dr. Glaser revealed that the plaintiff was alert, well-oriented, and exhibited somewhat anxious and depressed mood, and normal judgment, insight, and memory function (Tr. 24; *see* Tr. 320, 322, 324, 326, 328). The medical evidence further shows that the plaintiff's heart issue was alleviated upon treatment and was not an issue during the relevant period (Tr. 24; *see* Tr. 281, 304-306, 319, 321, 323, 325, 327). After his procedure in August 2008, the plaintiff did "very well" and was "active without chest discomfort"; he was able to perform strenuous activity for long periods of time without any cardiopulmonary symptoms; and Dr. Mataosky reported that the plaintiff should have no issue performing his previous job as a truck driver (Tr. 24; *see* Tr. 281, 304-06).

Moreover, as noted by the ALJ, the plaintiff admitted (and evidence confirms) that he rode his motorcycle well into the relevant period (Tr. 24; *see* Tr. 56-57, 313).

12

Treatment records following his motorcycle accident in June 2011 indicate that the plaintiff was fully ambulatory at the scene (Tr. 313-15). When the plaintiff sought medical attention the next day, he was alert, well-oriented, and in no acute distress (Tr. 314). X-rays of his cervical and thoracic spine also yielded normal results, no fractures were revealed, and there were no soft tissue issues (*id*.). The plaintiff was discharged in stable condition and directed not to work for two days (Tr. 315).  Furthermore, the medical records during the relevant period show that the plaintiff "ambulate[d] slowly, move[d] stiffly" in his follow-up visits after his motorcycle accident (Tr. 320, 322), but there is no indication that he used or required a cane until his May 2, 2013, visit with Dr. Glaser, which suggests that the plaintiff's condition worsened between his date last insured and the date Dr. Glaser gave his opinion (*see* Tr. 363).

The plaintiff further argues that the ALJ erred in his assessment of Dr. Glaser's opinion by noting the following:

> Dr. Glaser admitted in his progress note dated May 2013 that the claimant was not necessarily seeking disability but rather desired insurance so that he could be treated definitively and return to work.  Thus, Dr. Glaser appears to have rendered his opinions on disability in an effort to obtain insurance for the claimant rather than rendering opinions based on the objective evidence of record.

(Tr. 25).  To the extent that the ALJ may have improperly relied on a presumption as to Dr. Glaser's motivation, the error is harmless because the ALJ gave several other reasons for his finding that were supported by substantial evidence. *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir.1994) (finding the ALJ's error harmless where the ALJ would have reached the same result notwithstanding).

The ALJ gave "significant weight" to the opinion of Dr. Spivey, who performed a consultative psychological evaluation of the plaintiff in November 2011 (Tr. 25; *see* Tr. 343-47).  Based on his clinical interview of the plaintiff and relevant medical evidence, Dr.

Spivey determined that the plaintiff was capable of understanding simple instructions and performing simple tasks in the workplace (Tr. 346).  In the RFC finding, the ALJ limited the plaintiff to simple, routine tasks in an environment not requiring fast-paced production or ongoing interaction with the public (Tr. 23, 25).

The ALJ also gave significant weight to the opinions of the non-examining state agency consultants (Tr. 26).  The ALJ was required to consider the state agency physician assessments as opinion evidence. *See* 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination about whether you are disabled.").  A "non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted *by all of the other evidence* in the record." *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.1986) (emphasis in original). However, "the testimony of a nonexamining physician can be relied upon when it is consistent with the record." *Id*. The ALJ noted that, while the opinions of non-examining physicians do not as a general matter deserve as much weight as the opinions of examining or treating physicians, the opinions of Dr. Hadley, who performed a mental RFC assessment, and Dr. Saito, who performed a physical RFC assessment, were consistent with the plaintiff's presentation upon examination and were well supported by the weight of the evidence (Tr. 26). Dr. Hadley determined that even with the plaintiff's credibly-established impairments, he was able to perform simple, repetitive work tasks in a work setting that did not require ongoing interaction with the general public (Tr. 26; *see* Tr. 85-86, 90-92). Dr. Saito determined that the plaintiff could perform light work with occasional kneeling, crawling, and climbing of ladders, ropes, or scaffolds, and, upon evidentiary review, concluded that the

14

plaintiff's subjective complaints were only partially credible (Tr. 90). The ALJ's finding that the state agency consultants' opinions were well-supported by the record is based upon substantial evidence. *See Tanner v. Comm'r of Soc. Sec.,* 602 F. App'x 95, 101 (4th Cir. 2015) ("Here, while the ALJ assigned 'great weight' to the opinions of consultants who never examined or treated Ms. Tanner, he did so because their opinions were supported by the medical evidence as a whole.").

The plaintiff's argues in his reply that the opinion of a state agency consultant may only be entitled to greater weight that the opinion of a treating physician if it is based "on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source" (pl. reply at 5-6 (quoting SSR 96-6p, 1996 WL 374180, at *3)). "[A]lthough the excerpt of SSR 96–6p that [the plaintiff] relies on appears to limit the circumstances in which a state agency opinion can be given greater weight than the opinion of a treating physician, when read in its entirety, it is clear that that instance is but one example of when such weight may be accorded."[1] *Beaton v. Astrue*, C.A. No. 0:10-193-PJG, 2011 WL 1770221, at *7 (D.S.C. May 9, 2011). Here, the ALJ considered the entire record in evaluating the plaintiff's RFC

---

[1] The relevant portion of SSR 96–6p provides as follows:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. *For example*, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96–6p, 1996 WL 374180, at *3 (emphasis added).

and did not err in according significant weight to the opinions of the state agency consultants.

Within the plaintiff's argument regarding the ALJ's assessment of Dr. Glaser's opinion, he argues that the ALJ failed to properly assess his credibility (pl. brief at 5-6; pl. reply at 1-5). The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p, 1990 WL 300812).

The court further acknowledged:

> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most

16

> certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled.  However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4).  Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).  Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4.  Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

17

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)  the individual's daily activities;

(2)  the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)  factors that precipitate and aggravate the symptoms;

(4)  the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)  treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)  any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7)  any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.  *See* 20 C.F.R. § 404.1529(c).

The ALJ found that while the plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms, the plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible (Tr. 24).  Specifically, the ALJ noted that, in response to questioning at the hearing, the plaintiff initially only emphasized his neck and shoulder pain and only late added complaints of low back pain, almost as an afterthought (Tr. 24).  The ALJ also noted that, despite the plaintiff's use of narcotic pain medication, he could use his hands, and he was independent in his personal needs.  The ALJ also found that the fact the plaintiff was admittedly riding his motorcycle after his alleged onset date drew into question his alleged limitation in functioning (Tr. 24; *see* Tr. 56-57).  The ALJ also noted that the evidence of record post-dating the amended onset date was relatively sparse and proceeded to recite the medical

18

evidence (Tr. 24-26). Here, the ALJ did not reject the plaintiff's subjective complaints based solely on a lack of objective medical evidence, as the plaintiff appears to argue (pl. reply at 3-5). In *Hines v. Barnhart*, 451 F.3d 559 (4th Cir. 2006), which is cited by the plaintiff (pl. reply at 2-5), the Fourth Circuit Court of Appeals acknowledged that "'[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.'" *Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595).

> In his reply brief, the plaintiff argues:
>
> Defendant places great emphasis on the point that because Plaintiff "prepared his own meals, drove his car, went shopping independently" and "left his house frequently (four to five times a week)" and "had no difficulty tending to his personal care needs (dressing, bathing, shaving, feeding, etc.)" and "prepared meals independently," he would still be able to perform light work. However, such activities only serve to show that Plaintiff is not a total invalid which is not the requirement to establish entitlement to disability under Social Security law.

(Pl. reply at 1 (citing def. brief at 2-3)). While "[a]n individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act," *Totten v. Califano*, 624 F.2d 10, 11 (4th Cir.1980), the consideration of a claimant's daily activities is a proper consideration in assessing credibility, as set forth above. SSR 96-7p, 1996 WL 374186, at *3;  20 C.F.R. § 404.1529(c). Furthermore, it does not appear that the ALJ attached too much significance to the plaintiff's ability to care for his personal needs. The ALJ noted that the plaintiff had been taking narcotic pain medication for many years, but he could use his hands and was independent in his personal needs (Tr. 24). This was just one of several reasons given for the credibility finding. Moreover, while the ALJ found that the plaintiff's allegations of significant limitations and pain were not fully credible, he gave

the plaintiff the benefit of the doubt and further reduced the RFC to include the limitations described above (Tr. 26).

Based upon the foregoing, the undersigned finds that the ALJ's assessments of Dr. Glaser's opinion and the plaintiff's credibility were without legal error and based upon substantial evidence. Moreover, the undersigned finds that the ALJ's RFC assessment finding that the plaintiff was limited to light work with additional postural, environmental, and mental limitations is based upon substantial evidence.

### Vocational Expert

The plaintiff argues that the ALJ's hypothetical to the vocational expert did not include the extreme limitations expressed in Dr. Glaser's Mary 2013 opinion, specifically, that he would miss four days of work per month (pl. brief at 11). A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989). As indicated above, substantial evidence exists in the record to support the ALJ's decision to exclude from the RFC findings the limitations indicated by Dr. Glaser. Accordingly, the ALJ was not required to include the limitations in the hypothetical presented to the vocational expert. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir.2005) ("Having concluded that substantial evidence supports the ALJ's decision that Johnson suffers from no more than a slight emotional impairment, a slight impairment in gross and fine manipulation, and that any alleged drowsiness is not disabling, the hypothetical questions posed to the vocational expert adequately reflected Johnson's characteristics at the date she was last insured.").

## CONCLUSION AND RECOMMENDATION

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error.  Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.


s/ Kevin F. McDonald
United States Magistrate Judge

December 10, 2015
Greenville, South Carolina