IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Marion P. Binnarr, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 6:14-4425-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on December 10, 2015, recommending that the Commissioner's decision be affirmed. (Dkt. No. 22). Plaintiff timely filed objections to the R & R, and the Commissioner filed a response. (Dkt. No. 24, 25). For reasons set forth below, the Court reverses the decision of the Commissioner and remands the matter to the agency for further action consistent with this decision.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

-1-

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). Known popularly as the "Treating Physician Rule," the regulation requires the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most

able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188 (July 2, 1996). Further, since the Commissioner recognizes that the non-examining expert has "no treating or examining relationship" with the claimant, she pledges to consider their supporting explanations for their opinions and "the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources." § 404.1527(c)(3).

## Discussion

The Plaintiff has a well-documented history of multiple severe physical and mental impairments[1], with the most significant being degenerative disc disease and osteoarthritis which

---

[1] The Administrative Law Judge found that Plaintiff's severe impairments include "degenerative disc disease, osteoarthrosis, history of cardiac bypass surgery, anxiety, and depression." Tr. 21.

have produced a long-term diagnosis of chronic pain and daily treatment with multiple doses of opioid medications. The dispute in this matter is a relatively narrow one. The Commissioner asserts that Plaintiff's significant physical and mental impairments substantially limit his ability to function normally in the workplace but he still retains the residual functional capacity for light work. Tr. 23-26. Plaintiff asserts that his severe impairments are more limiting and prevent him from performing even at the level of light work, which due to his age[2] would render him disabled under the Social Security Act. 20 C.F.R. § 404.1568(d)(4).

Plaintiff alleges that the Commissioner erred in failing to give proper weight to the opinions of his treating physician, Dr. Anthony Glaser. Plaintiff began his treatment with Dr. Glaser in December 2008, and was then evaluated for "chronic back and neck pain, with muscle spasms in the posterior aspects of both legs." Dr. Glaser noted in that initial evaluation a significant finding from a 2006 MRI of Plaintiff's lumbar spine: a disc protrusion with contact with the "exiting L4 nerve root." Tr. 335-36. Dr. Glaser prescribed narcotic pain medications to provide Plaintiff relief from his chronic pain. Tr. 336.

When Plaintiff began his treatment with Dr. Glaser, he was still attempting, when able, to continue his work in construction. When he was out of work, Plaintiff was able to manage his pain with several doses of pain medications daily. However, when Plaintiff was attempting to work, he required 4-5 doses of narcotic pain medications per day, and he had complaints of severe pain in his neck, shoulders, back and legs. Tr. 327, 329, 331, 335. Plaintiff was documented in Dr. Glaser's records in 2010 and early 2011 expressing a desire to continue

---

[2] Plaintiff was born on January 3, 1962. He was 48 years old at his amended onset date of April 6, 2010, and 50 years old at his date last insured of March 31, 2012. Plaintiff is presently 54 years old. Tr. 21, 313.

working but had "to stop every job he starts due to pain." Tr. 323, 325, 327. The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 6, 2010. Tr. 21.

Plaintiff's already compromised condition was complicated by a motorcycle accident on June 4, 2011, when he was struck by an automobile with "moderate impact velocity." Tr. 313. Dr. Glaser noted in his June 30, 2011 office visit that Plaintiff now had throbbing pain and his baseline pain had worsened since the accident. Tr. 319. Over ensuing office visits, Dr. Glaser consistently diagnosed Plaintiff with chronic neck, shoulder, back and leg pain and prescribed him high dose narcotics to provide him relief. Tr. 350-51, 352-53, 368-69, 370-71, 373-74.

Dr. Glaser completed a form titled "Attending Physician's Statement" on May 2, 2013, in which he offered a number of opinions relevant to Plaintiff's claim for Social Security disability. At the time he completed this form, Dr. Glaser had treated Plaintiff for more than four years with more that a dozen office visits. Dr. Glaser stated that it was his opinion Plaintiff could not sit, stand or walk more than two hours in an eight hour day and would likely be absent from work due to his severe impairments more than four days per month. Tr. 361.[3] Plaintiff's work related conditions included "chronic back, neck, leg pain" and "chronic use of high dose opioid medications." *Id.* There is little dispute that if Dr. Glaser's opinions are credited, Plaintiff would be disabled under the Social Security Act. Tr. 60-61.

The Administrative Law Judge ("ALJ"), in reaching the decision that Plaintiff retained the capacity to perform light work, accorded "little weight" to Dr. Glaser's opinions. Tr. 25. The ALJ provided several explanations for disregarding the opinions of Plaintiff's long-treating,

---

[3] Plaintiff testified at the administrative hearing that he could not sit more than one to two hours at a time or stand more than 20-30 minutes at a time. Tr. 47.

personal physician. First, he stated that the opinion was "rendered long after the date last insured." *Id.* Plaintiff's date last insured was March 31, 2012, and Dr. Glaser's report was prepared a little over a year later on May 2, 2013. Second, the ALJ asserted that Dr. Glaser's opinions were "inconsistent with his own contemporary findings on physical examination." *Id.* Third, the ALJ gave "little weight" to Dr. Glaser's opinions because the physician had noted in his medical record that what Plaintiff really wanted was not to be disabled but to get access to insurance and medical care so that he might get treatment that would allow him to work. From this note, the ALJ concluded that "Dr. Glaser appears to have rendered his opinions on disability in an effort to obtain insurance for the claimant rather than rendering opinions on the objective evidence in the record." *Id.*

In contrast, the ALJ gave "some weight" to the opinions of a non-examining and non-treating physician, Dr. Angela Saito, who concluded that Plaintiff was capable of performing light work.[4] Tr. 26. Dr. Saito's brief report, based on a chart review of Plaintiff's medical records, recognized Plaintiff's "severe" and "chronic" pain in his legs, neck, shoulders and back. Plaintiff's neck and shoulder pain was described by Dr. Saito as "burning," and she recognized the contact between Plaintiff's exiting left nerve root at L3-4 and a protruding disc. Tr. 88. Dr. Saito's opinions differed from the opinions of Plaintiff's treating physician, Dr. Glaser, only regarding the number of hours Plaintiff could sit, stand and walk. Dr. Saito, who had never

---

[4] The record also contained the opinions of two non-examining and non-treating psychologists who offered opinions regarding Plaintiff's severe impairments of anxiety and depression. Tr. 84-87; 344-47. The Court's findings here relate to the expert opinions offered regarding Plaintiff's severe impairments of degenerative disc disease and osteoarthritis by Dr. Glaser and Dr. Saito, and the failure to weigh these opinions under the standards of the Treating Physician Rule.

treated or examined Plaintiff, concluded that the claimant could sit, stand and walk six hours in an eight-hour work day, while Plaintiff's long treating and examining physician, Dr. Glaser, concluded that Plaintiff could only sit, stand and walk two hours a day. Tr. 88, 361. Dr. Saito provided no evidence to corroborate her opinions regarding how long Plaintiff could sit, stand or walk.

The ALJ's adoption of the opinions of the non-treating and non-examining physician and rejection of the opinions of the treating physician of the claimant under these circumstances constituted multiple violations of the Treating Physician Rule. The ALJ is required to weigh the respective opinions of all of the expert witnesses in light of their examining relationship, treatment relationship, nature and extent of treatment relationship, supportability of the opinions in the medical record, and consistency. 20 C.F. R. § 404.1527(c). There is no indication that the ALJ weighed the competing testimony of Dr. Glaser and Dr. Saito in light of the standards set forth in the Treating Physician Rule. In particular, there is not the slightest suggestion in the ALJ's decision that any weight was accorded to the opinions of Dr. Glaser because of his long-term treating and examining relationship and the special knowledge and insights he had acquired from his treatment of Plaintiff. The regulations further require that if weight is to be given to the opinions of a non-examining physician it must be based on the "supporting explanations." § 404.1527(c)(3). In this case, Dr. Saito provided no explanation of the basis of her opinions that Plaintiff could sit, stand and walk for six hours. Tr. 88.

Furthermore, the ALJ's decision flies in the face of *Bird v. Commissioner of Social Security Admin.*, 699 F.3d 337, 3400-341 (4th Cir. 2012). The ALJ rejected Dr. Glaser's opinions issued on May 2, 2013, because it was "long after the date last insured" of March 31,

2012. However, *Bird* held that medical opinions rendered after the date last insured may be considered retrospectively where "the evidence permits an inference of linkage with the claimant's pre-DLI condition." A review of Dr. Glaser's medical records and his report of May 2, 2013 demonstrate a consistent linkage between Plaintiff's condition prior to the date last insured and his condition in the year following the date last insured. In fact, Plaintiff's severe degenerative disc disorder, osteoarthritis, and chronic pain were clearly documented and described in Dr. Glaser's medical records years before Plaintiff's date last insured, making it wholly inappropriate under *Bird* for the ALJ to disregard Dr. Glaser's opinion because of when it was prepared.[5]

Additionally, the ALJ's conclusion that Dr. Glaser's opinions were not sincere but simply a means to obtain insurance for his patient is baffling to the Court. Dr. Glaser's office note in question indicates that the Plaintiff was not seeking disability simply to avoid work, but hoped that by getting disability and access to medical care he might improve and return to work. Tr. 368. Turning this very positive statement about his patient into an attack on Dr. Glaser's professionalism is unreasonable and profoundly unfair. Moreover, the ALJ's finding that Dr. Glaser's opinions did not represent his honest professional judgment and were, instead, a ruse to obtain his patient health insurance is wholly unsupported in the record. Providing such a dubious explanation for giving little weight to the opinion of the claimant's treating physician hardly

---

[5] The ALJ's suggestion that the passage of 13 months between the Plaintiff's date last insured and the expert report was too long a period for retrospective consideration because the report was "rendered long after the date last insured" ignores Fourth Circuit precedent that reports six or seven years after the date of last insured are not too late so long as the report "permits an inference of linkage between the claimant's post-DLI state of health and her pre-DLI condition . . . ." *Bird v. Commissioner of Social Security Admin.*, 699 F.3d at 339-342; *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969).

meets the Commissioner's duty to "always give good reasons . . . for the weight given to a treating source's medical opinions." SSR 96-2P, 1996 WL 374188 at *5 (July 2, 1996).

Finally, the ALJ's statement that Dr. Glaser's opinions are not consistent with his office records is not supported by substantial evidence. Indeed, a review of Dr. Glaser's medical records demonstrate that the physician consistently documented Plaintiff's severe and chronic pain condition. This included a reference Plaintiff's nerve root compression at L4 diagnosed by an MRI, consistent complaints of severe neck, shoulder, back and leg pain, and the chronic need for powerful narcotic pain medications to get through the day. Tr. 319-20, 321-22, 323-24, 325-26, 327-28, 329-30, 331-32, 333-34, 335-36, 350-51, 352-53, 368-69 370-71, 373-74.

## Conclusion

Based on the foregoing, the Court **REVERSES** the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and **REMANDS** the matter to the

Commissioner for further action consistent with this order.[6] In light of the fact that nearly four and a half years have passed since Plaintiff applied for Social Security disability, the agency is directed to conduct an administrative hearing on remand and to render a decision by the ALJ within 120 days of this order.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

Charleston, South Carolina
January 21, 2016

---

[6] On remand, the Commissioner should revisit the credibility analysis relating to the Plaintiff's testimony at the administrative hearing about the sources of his pain. The ALJ claimed that Plaintiff "initially emphasized his allegations of neck and shoulder pain and only later added complaints of low back pain, almost as an afterthought." Because of this "noticeable absence of complaints regarding back pain," the ALJ concluded that "this symptom is not as severe as one would think." Tr. 24. A review of Plaintiff's testimony reveals that this description of Plaintiff's testimony is profoundly unfair. The ALJ asked Plaintiff "what kept you from working as of March 31 of 2012?" Plaintiff began by explaining that his "neck and shoulders are like on fire" and indicated that even sitting in the hearing made it difficult for him. Plaintiff's testimony was then interrupted by the ALJ, who offered Plaintiff the option of standing up and moving around during the hearing. Plaintiff thanked the ALJ and then continued his testimony by addressing his problems with his lower back and legs. Tr. 45. All of this would have taken just a few seconds, and any delay by Plaintiff in mentioning his back and leg problems was caused by the ALJ's interruption. The claim by the ALJ that Plaintiff "only later added complaints of low back pain" and this raised doubts about Plaintiff's credibility is manifestly unreasonable and should be corrected on remand. Further, the Commissioner on remand should address whether there exists any evidence in the record inconsistent with the opinion of Dr. Glaser that the claimant would likely be absent more than four days per month due to his impairments. Tr. 361. If not, the Commissioner must then address the issue of whether Plaintiff is entitled to judgment as a matter of law because the Commissioner bears the burden of demonstrating there are significant available jobs in the national economy the claimant can perform, and the vocational expert testified that there would be no jobs available to Plaintiff in the national economy if he were absent more than four days per month. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983); Tr. 61.